IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HAROLD WALKER, | ) | No. CV-F-04-6329 REC SMS |
| | ) | |
| Plaintiff, | ) | ORDER DENYING PLAINTIFF'S |
| | ) | MOTION FOR SUMMARY |
| vs. | ) | JUDGMENT, GRANTING SUMMARY |
| | ) | JUDGMENT FOR DEFENDANTS, |
| FRESNO POLICE DEPARTMENT, | ) | AND DIRECTING THE CLERK OF |
| et al., | ) | THE COURT TO ENTER JUDGMENT |
| | ) | FOR DEFENDANTS. |
| Defendants. | ) | |
| | ) | (Docs. 31 & 35) |
| | ) | |

Plaintiff is a state prisoner confined in Centinela State
Prison who is proceeding pro se and in forma pauperis with an
action concerning alleged civil right violations pursuant to 42
U.S.C. section 1983.  Currently before the Court are Plaintiff's
Motion for Summary Judgment and Defendants' Motion for Summary
Judgment or, in the Alternative, Adjudication of Issues.  Upon
due consideration of the arguments of the parties and the record
herein, the Court GRANTS Defendants' motion and DENIES
Plaintiff's motion.

1

**I.   Factual Background**

   **A.   July 8, 2004**

   On July 8, 2004 ("July 8"), Defendant Officer Conrado Martin
was on uniformed patrol with Officer Preis, who is not a
defendant in this action.  At around midnight, in response to a
dispatch regarding a domestic disturbance, they proceeded to 335
W. Hawes Avenue (the "Residence") in Fresno.  When they arrived,
the officers heard yelling inside.  A male voice inside asked
"who called the fucking police?"  Martin Decl. ¶ 5.

   Officer Martin drew his weapon and walked to the front of
the house, while Officer Preis went to the east side of the
house.  Officer Martin opened the front door, shined his
flashlight into the house, and observed Ms. Canada and Plaintiff
sitting next to each other.  Plaintiff appeared to Officer Martin
to have a dazed look on his face and to be very angry.  Martin
Decl. ¶ 5.  Officer Martin "could tell an argument or some type
of disagreement was going on."  Pl.'s Opp'n Ex. 1 at 125:9-11.
Ms. Canada's two children were present.  Id. at 125:2-5.

   Officer Martin entered the house and pointed his gun at
Plaintiff.  At this time, Officer Martin could not see
Plaintiff's right hand.  Pl.'s Opp'n 3.  Officer Martin told
Plaintiff at least two times to come toward him with his hands
showing.  Martin Decl. ¶ 6.  Plaintiff did not comply with
Officer Martin's order.  Instead, Plaintiff "began backing away."
Pl.'s Opp'n 3.  Officer Martin followed Plaintiff as he backed
away toward the back bedroom of the house, continuing to demand

2

1  that Plaintiff stop walking away.  Martin Decl. ¶ 7.

2      At this point, Plaintiff turned his back to Officer Martin.

3  Plaintiff claims that he was simply turning around, with his

4  hands out, to show Officer Martin that had no weapons.  Pl.'s

5  Opp'n 3.  Plaintiff does not claim, however, that Officer Martin

6  asked him to turn around.  Officer Martin claims that Plaintiff

7  turned and ran away from him.  Martin Decl. ¶ 7.

8      After Plaintiff turned, Officer Martin drew his "M26

9  department issued less lethal taser" and discharged it in

10 Plaintiff's direction.  Id. at ¶ 8.  Officer Martin thought that

11 the taser darts hit Plaintiff, who then pulled one out of his

12 back.  Id.  Plaintiff denies that the taser struck him.  After

13 Officer Martin discharged the taser, Plaintiff fled to the den

14 area of the residence and slammed the door.  Id. at ¶ 9.  Officer

15 Martin exited the residence through the front door and called for

16 assistance.

17 **B.   July 9, 2004**

18      On July 9, 2004 ("July 9"), at approximately 8:12 a.m.,

19 Defendant Officer Ron Dupras was dispatched to a domestic

20 disturbance at the Residence.  When Officer Dupras arrived, he

21 entered the house.  Defendant Officer Luis Galindo, who was also

22 dispatched to the address, arrived a couple minutes later and

23 entered the house.

24      Officer Dupras ordered Plaintiff to stand with his legs

25 spread apart and hands on the back of his head.  Plaintiff

26 alleges that he complied with this instruction.  Pl.'s Opp'n 4.

3

Officer Dupras then searched Plaintiff for weapons.  Plaintiff alleges that Officer Dupras then twisted Plaintiff's right arm, causing pain, which Plaintiff reported to the officer.  Id. Officer Dupras then allegedly grabbed the back of Plaintiff's shirt and kicked Plaintiff's knee, which caused pain and made Plaintiff fall to the ground face-first.  Id.  Once Plaintiff was on the ground, one of the officers placed his knee forcefully into Plaintiff's neck.  Id.  The other officer placed his knee forcefully into Plaintiff's back, causing injuries.  Id.  Later, Plaintiff was handcuffed and placed in a police car.  Id.

Following his arrest, Plaintiff was immediately taken to University Medical Center where Nurse Practitioner Elaine Thweatt treated him.  Plaintiff did not mention any pain when he was booked, but complained of back pain three months after the arrest.

On August 13, 2004, Plaintiff filed a personnel complaint with the Fresno Police Department against Officers Dupras, Galindo, and Martin.  Pl.'s Mot. Ex. 11.  He received no response to the complaint.

**II.  Procedural History**

    **A.   Criminal Case**

On October 20, 2004, after a jury trial in Fresno County Superior Court, Plaintiff was convicted of eight of the nine counts against him, including several felony counts, for his conduct on July 8 and July 9.  Ratliff Decl. Ex. 2 at 1014:5-1016:8; see People v. Harold Walker, Fresno County Superior Court

No. F04904506-3.  Plaintiff was found guilty of, among other

things, violating California Penal Code section 148(a)(1)[1] on

both July 8 and July 9.  Ratliff Decl. Ex. 2 at 1014:23-1015:3,

1016:2-8.  Plaintiff was acquitted only of Count Seven, criminal

threats in violation of California Penal Code section 422.  Id.

at 1015:16-21.  Plaintiff has sought habeas corpus relief under

28 U.S.C. section 2254, but none of the convictions have been

reversed, expunged, or declared invalid.  See Walker v. Fresno

County Jail, 1:04-cv-006452-AWI-TAG.

### B.   This Case

On September 29, 2004, Plaintiff filed his Complaint in this

Court seeking damages for constitutional violations under 42

U.S.C. section 1983 ("Section 1983").  On December 27, 2005,

Plaintiff filed a Motion for Summary Judgment, along with a

statement of undisputed facts and exhibits.  On January 12, 2006,

Defendants filed a memorandum in opposition to the motion, a

response to Plaintiff's statement of undisputed facts, a

supporting declaration, and exhibits.  On January 13, 2006,

Defendant filed its own Motion for Summary Judgment or, in the

---

[1]California Penal Code section 148(a)(1) provides, in relevant
part, as follows:

> Every person who willfully resists, delays, or
> obstructs any public officer . . . in the
> discharge or attempt to discharge any duty of
> his or her office or employment, when no other
> punishment is prescribed, shall be punished by
> a fine not exceeding one thousand dollars
> ($ 1,000), or by imprisonment in a county jail
> not to exceed one year, or by both that fine
> and imprisonment.

5

1  Alternative, Adjudication of Issues.  Defendant submitted a

2  statement of undisputed facts, declarations, and exhibits in

3  support of its motion.  On February 2, 2006, Plaintiff filed a

4  document entitled Plaintiff's Opposition to Defendant's

5  Opposition to Plaintiff's Motion for Summary Judgment and

6  Defendant's Motion for Summary Judgment.  It appears that this

7  document is both an Opposition to Defendants' summary judgment

8  motion and a Reply to Defendants' Opposition to Plaintiff's

9  motion.

10      On March 2, 2006, the Court directed the parties to submit

11  supplemental briefing regarding Heck v. Humphrey (Heck), 512 U.S.

12  477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).

13  **III. Legal Standard**

14      Summary judgment is proper when it is shown that there

15  exists "no genuine issue as to any material fact and that the

16  moving party is entitled to judgment as a matter of law."  Fed.

17  R. Civ. P. 56.  A fact is "material" if it is relevant to an

18  element of a claim or a defense, the existence of which may

19  affect the outcome of the suit.  T.W. Elec. Serv., Inc. v. Pac.

20  Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

21  (citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,

22  475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

23  Materiality is determined by the substantive law governing a

24  claim or a defense.  Id.  The evidence and all inferences drawn

25  from it must be construed in the light most favorable to the

26  nonmoving party.  Id.

1     The initial burden in a motion for summary judgment is on

2 the moving party.  The moving party satisfies this initial burden

3 by identifying the parts of the materials on file it believes

4 demonstrate an "absence of evidence to support the nonmoving

5 party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106

6 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The burden then shifts to

7 the nonmoving party to defeat summary judgment.  T.W. Elec., 809

8 F.2d at 630.  Where a court decides cross motions for summary

9 judgment, neither party is entitled to summary judgment if a

10 genuine issue exists as to any material fact.  United States v.

11 Fred A. Arnold, Inc., 573 F.2d 605, 606 (9th Cir. 1978) (citing

12 Fed. R. Civ. P. 56(c)).

13     The nonmoving party "may not rely on the mere allegations in

14 the pleadings in order to preclude summary judgment," but must

15 set forth by affidavit or other appropriate evidence "specific

16 facts showing there is a genuine issue for trial."  Id. (citing

17 Fed. R. Civ. P. 56(e)).  The nonmoving party may not simply state

18 that it will discredit the moving party's evidence at trial; it

19 must produce at least some "significant probative evidence

20 tending to support the complaint."  Id. (citing First Nat'l Bank

21 v. Cities Serv. Co., 391 U.S. 253, 290, 88 S. Ct. 1575, 20 L. Ed.

22 2d 569 (1968)).

23 **IV.  Defendants' Motion for Summary Judgment**

24     **A.   Malicious Prosecution**

25     Defendants contend that Plaintiff's allegation that

26 Defendants prepared false police reports in connection with the

July 8 and July 9 incidents should be evaluated as a claim for malicious prosecution under Section 1983. Plaintiff does not object to this characterization. "In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'" Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995)). A necessary element of malicious prosecution is termination in favor of the accused. Heck, 512 U.S. at 484. The accused cannot prevail on a malicious prosecution claim, even where the prosecution is unsuccessful, if he does not meet his burden to show the absence of probable cause. Freeman, 68 F.3d at 1189 (merely pointing out that criminal charges were dismissed could not support a claim for malicious prosecution without evidence that probable cause was lacking).

At his criminal trial, Plaintiff was convicted of eight of the nine counts against him. Ratliff Decl. Ex. 2 at 1014:5-1016:8. Plaintiff was acquitted of Count Seven, criminal threats in violation of California Penal Code section 422. Id. at 1015:16-21. Plaintiff has not brought forth any evidence that meets his burden to show lack of probable cause regarding this crime. Nor has Plaintiff pointed to any evidence that connects statements or omissions in the police reports to the unsuccessful

1  prosecution.  Accordingly, summary judgment for Defendants on
2  this claim is GRANTED.

3      **B.   Failure to Summon Medical Care**

4      The due process clause requires government officials to
5  secure medical care for persons injured in police custody.
6  Maddox v. Los Angeles, 792 F.2d 1408, 1415 (9th Cir. 1986)
7  (citing Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S. Ct.
8  2979, 77 L. Ed. 2d 605 (1983)).  Police officers can fulfil this
9  constitutional requirement "by either promptly summoning the
10 necessary medical help or by taking the injured detainee to a
11 hospital."  Maddox, 792 F.2d at 1415 (citing Revere, 463 U.S. at
12 245).

13     On July 8, Plaintiff fled the scene after Officer Martin
14 discharged his taser.  Because Plaintiff was not in custody on
15 July 8, Defendants did not have a duty to seek medical care for
16 him.

17     On July 9, it is undisputed that Plaintiff was immediately
18 taken to University Medical Center where Nurse Practitioner
19 Elaine Thweatt treated him.  Pl.'s Opp'n at 4; Thweatt Decl. ¶ 2.
20 Ms. Thweatt determined that he had no injuries and composed a
21 report showing her findings.  Thweatt Decl. ¶ 3; Pl.'s Mot. Ex.
22 10.

23     Plaintiff contends that he should have been allowed to see a
24 doctor instead of just a nurse.  He does not provide any evidence
25 that indicates that Ms. Thweatt's care was inadequate or that her
26 diagnosis that he was uninjured was incorrect.  Plaintiff submits

9

documents from September and October 2005 that describe a back injury he claims he suffered on July 9.  Pl.'s Opp'n Exs. 7-10. The documents do not indicate that Ms. Thweatt improperly treated Plaintiff or that a doctor could have treated Plaintiff more effectively.  In fact, one of the documents indicates that "[a]t booking he did not mention any concerns of back pain and it was not until 9/2/04 that he put medical request for c/o back pain," almost three months after his arrest.  Pl.'s Opp'n Ex. 7.  In any event, the Constitution only requires that an officer "tak[e] the injured detainee to a hospital."  Maddox, 792 F.2d at 1415 (citing Revere, 463 U.S. at 245).  It is undisputed that Defendants took this step.  Accordingly, summary judgment for Defendants on this issue is GRANTED.

   **C.   Cruel and Unusual Punishment**

      Plaintiff claims that he is entitled to relief on the grounds that Defendants subjected him to "cruel and unusual punishment."  Pl.'s Opp'n 7.  Plaintiff does not specify what conduct of Defendants gives rise to this claim.

      It appears that Plaintiff is suggesting that the force the officers used on him amounted to cruel and unusual punishment under the Eighth Amendment.  The Eighth Amendment's protections, however, extend only to convicted prisoners.  Gary H. v. Hegstrom, 831 F.2d 1430, 1432 (9th Cir. 1987); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986) (pretrial detainee's treatment was not properly evaluated under the Eighth Amendment because he had not been convicted).  At the time of the conduct alleged in

10

1  the Complaint, Plaintiff had not yet been convicted.  Therefore,

2  Plaintiff does not have a claim for cruel and unusual punishment

3  under the Eighth Amendment.

4      Plaintiff does contend that Defendants denied him medical

5  care on July 9.  A criminal defendant who has not been convicted

6  may recover for a due process violation based on principles

7  derived from the Eighth Amendment.   Jones, 781 F.2d at 771.  A

8  pretrial detainee may recover for inadequate medical treatment if

9  officials "are deliberately indifferent to [the detainee]'s

10 serious medical needs."  Id.   All that the due process clause

11 requires of police officers is that they "tak[e] the injured

12 detainee to a hospital."  See Maddox, 792 F.2d at 1415 (citing

13 Revere, 463 U.S. at 245).  Here, as discussed above, the officers

14 fulfilled this constitutional duty as a matter of law.

15     Plaintiff does not provide any basis on which he can recover

16 for alleged cruel and unusual punishment.  Accordingly, summary

17 judgement is GRANTED for Defendants on the cruel and unusual

18 punishment claim.

19     **D.   Fourth Amendment Claims**

20     Plaintiff seeks to recover under the Fourth Amendment based

21 on claims that officers inflicted excessive force on him, that

22 officers illegally entered the Residence, and that officers

23 arrested him without probable cause.

24         **1.   Officer Grijalva**

25     Plaintiff has introduced no evidence that suggests that

26 Officer Grijalva had any role in any of the force Defendants

11

1   allegedly directed at Plaintiff, the allegedly unlawful entries

2   of the Residence, or the allegedly improper arrests.

3   Accordingly, summary judgment in favor of Officer Grijalva on the

4   Fourth Amendment claims is GRANTED.

5                **2.   Chief of Police Jerry Dyer**

6        Defendants contend that Defendant Chief of Police Jerry Dyer

7   ("Chief Dyer") is entitled to summary judgment because Plaintiff

8   has presented no facts that indicate his act or omission caused a

9   violation of Plaintiff's rights.  Though supervisors may not be

10  vicariously liable for their subordinates' constitutional

11  violations actions, they can be individually liable if they are

12  personally involved with the constitutional violation or if a

13  sufficient causal connection exists between their wrongful

14  conduct and the constitutional violation.  <u>Hansen v. Black</u>, 885

15  F.2d 642, 646 (9th Cir. 1989).

16              Supervisory liability is imposed against a
            supervisory official in his individual
17          capacity for his "own culpable action or
            inaction in the training, supervision, or
18          control of his subordinates"; for his
            "'acquiesce[nce] in the constitutional
19          deprivations of which [the] complaint is
            made'"; or for conduct that showed a
20          "'reckless or callous indifference to the
            rights of others.'"

21

22  <u>Larez v. Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991) (internal

23  citations omitted).  A supervisor may be liable for setting in

24  motion acts that cause others to inflict constitutional injury.

25  <u>Id.</u> at 645 (citing <u>Johnson v. Duffy</u>, 588 F.2d 740, 743-44 (9th

26  Cir. 1978)).

                                12

1    Plaintiff has presented no evidence of any acts or omissions

2    of Chief Dyer that injured Plaintiff.  There is no indication

3    that Chief Dyer was present when Plaintiff suffered any of his

4    injuries.  Nor does Plaintiff present facts to show that Chief

5    Dyer failed to train officers who injured Plaintiff, that he

6    acquiesced in any of the injurious actions, or that he acted with

7    indifference to Plaintiff's rights.

8    Plaintiff does present evidence that he filed a personnel

9    complaint with the Fresno Police Department.  Pl.'s Mot. Ex. 11.

10   He claims he received no response to the complaint.  In <u>Larez</u>,

11   the Ninth Circuit held that a police chief could be liable on an

12   acquiescence theory where he "condoned, ratified, and encouraged

13   the excessive use of force" by failing to discipline the officers

14   involved, failing to set up procedures to prevent such actions in

15   the future, and signing a letter refusing to sustain the victim's

16   complaints.  946 F.2d at 646.  Plaintiff has not presented any

17   such evidence of action or inaction of Chief Dyer.  That

18   Plaintiff did not receive a response to his personnel complaint

19   is not sufficient to establish that Chief Dyer is responsible for

20   an unconstitutional omission.  Accordingly, Plaintiff's claims

21   against Chief Dyer fail as a matter of law.  Summary judgement on

22   this claim in favor of Chief Dyer is GRANTED.

23            **3.   City of Fresno**

24    Municipalities may not be held liable for the

25   unconstitutional acts of their employees absent a "direct causal

26   link between a municipal policy or custom and the alleged

13

1   constitutional deprivation."   Monell v. Dep't of Soc. Serv. of

2   N.Y. (Monell), 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 611

3   (1978).   In Monell, the Supreme Court held that, in the absence

4   of an official policy, a municipality could be liable under

5   Section 1983 where discriminatory practices are "so permanent and

6   well settled as to constitute a 'custom or usage' with the force

7   of law."   436 U.S. at 691.

8        Plaintiff has not brought forth any facts supporting a claim

9   that any action by the City of Fresno has deprived him of his

10  constitutional rights.   Plaintiff has not alleged, much less

11  provided evidence, that a custom or policy of the City of Fresno

12  caused or contributed to the excessive force or illegal entry or

13  arrest of which Plaintiff complains.   Accordingly, summary

14  judgment is GRANTED in favor of the City of Fresno.

15               **4.   Excessive Force**

16       The Fourth Amendment prohibition on "unreasonable . . .

17  seizures"  protects individuals from excessive force in the

18  context of an arrest or seizure.   U.S. Const. amend. IV; see

19  Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed.

20  2d 443 (1989).   To determine whether the amount of force used in

21  a seizure or arrest was excessive, the Supreme Court has

22  prescribed the "objectively reasonable standard," which requires

23  a careful balancing of "the nature and quality of the intrusion

24  on the individual's Fourth Amendment interests against the

25  countervailing governmental interests at stake."   Id. at 396.

26       The use of deadly force is reasonable only where

14

1   "1) it is necessary to prevent escape; 2) the officer has

2   probable cause to believe that the suspect poses a significant

3   threat of death or serious physical injury to him or to others;

4   and 3) if feasible, the officer has given some warning."

5   Quintanilla v. City of Downey, 84 F.3d 353, 357 (9th Cir. 1996)

6   (citing Tennessee v. Garner, 471 U.S. 1, 3, 11, 105 S. Ct. 1694,

7   85 L. Ed. 2d 1 (1985)).  Where the force is not deadly, a court

8   evaluates the nature of the force in light of the totality of the

9   circumstances, "including:  1) the severity of the crime at

10  issue; 2) whether the suspect poses an immediate threat to the

11  safety of the officers or others; and 3) whether the suspect

12  actively resists arrest or attempts to evade arrest by flight."

13  Quintanilla, 84 F.3d at 357 (citing Graham, 490 U.S. at 396).

14  Courts must apply the reasonableness standard objectively,

15  viewing the facts from the perspective of the officer at the time

16  of the incident.  Graham, 490 U.S. at 397.

17                  **a.   Implications of Section 148 Conviction**

18       In Heck, the Supreme Court placed additional requirements on

19  a prisoner making a claim under 42 U.S.C. section 1983 ("Section

20  1983"):

21              [I]n order to recover damages for allegedly
            unconstitutional conviction or imprisonment,
22          or for other harm caused by actions whose
            unlawfulness would render a conviction or
23          sentence invalid, a § 1983 plaintiff must
            prove that the conviction or sentence has
24          been reversed on direct appeal, expunged by
            executive order, declared invalid by a state
25          tribunal authorized to make such
            determination, or called into question by a
26          federal court's issuance of a writ of habeas

                              15

1
2
3

> corpus, 28 U.S.C. § 2254.  A claim for
> damages bearing that relationship to a
> conviction or sentence that has not been so
> invalidated is not cognizable under § 1983.

4  512 U.S. at 486-87 (footnotes omitted).

5      The jury in Plaintiff's criminal trial found him guilty of

6  violating California Penal Code section 148(a)(1)[2] on both July 8

7  and July 9.  Ratliff Decl. Ex. 2 at 1014:23-1015:3, 1016:2-8.

8  Though Plaintiff has sought habeas corpus relief, the conviction

9  has not been reversed, expunged, or declared invalid.

10     A defendant does not violate Penal Code section 148

11  ("Section 148") unless he directs his conduct at an officer who

12  is "in the discharge or attempt to discharge any duty of his or

13  her office or employment."  Cal. Penal Code § 148(a)(1).  This

14  means that a defendant cannot be convicted under Section 148 "of

15  an offense against an officer engaged in the performance of

16  official duties unless the officer was acting lawfully at the

17  time."  People v. Simons, 42 Cal. App. 4th 1100, 1109 (1996)

18  (citing People v. Gonzalez 51 Cal. 3d 1179, 1217 (1990)).  "'The

19  rule flows from the premise that because an officer has no duty

20

21  [2]California Penal Code section 148(a)(1) provides, in relevant
part, as follows:

22
23
24
25
26

> Every person who willfully resists, delays, or
> obstructs any public officer . . . in the
> discharge or attempt to discharge any duty of
> his or her office or employment, when no other
> punishment is prescribed, shall be punished by
> a fine not exceeding one thousand dollars ($
> 1,000), or by imprisonment in a county jail
> not to exceed one year, or by both that fine
> and imprisonment.

to take illegal action, he or she is not engaged in "duties," for purposes of an offense defined in such terms, if the officer's conduct is unlawful.'" Id. (quoting Gonzalez 51 Cal. 3d at 1217).

The Ninth Circuit has held that conviction under Section 148 can invalidate a Section 1983 claim for excessive force where success "would necessarily imply or demonstrate that the plaintiff's earlier conviction was invalid." Smith v. Hemet, 394 F.3d 689, 699 (9th Cir. 2005). The court held that an existing conviction would bar an excessive force claim unless "the use of excessive force occurred *subsequent to* the conduct on which his conviction was based." Id. at 698 (emphasis in original).

The Smith court was careful to distinguish a conviction by a jury under Section 148 from a guilty plea under that section. Id. at 699 n. 5. Where the Section 1983 plaintiff pled guilty or entered a nolo contendere plea to the Section 148 charge, the factual basis for his conviction was not necessarily the entire course of his conduct. Id. The plea could be based on certain actions that occurred prior to the time when officers used excessive force. Id. In such a case, the Heck rule would not necessarily bar claims for excessive force occurring after the conduct giving rise to the Section 148 plea. Id.

A conviction by a jury, on the other hand, necessarily entails a broader finding regarding the officers' conduct. Id. A jury that convicts a defendant of a single-act offense where multiple acts could serve as a basis for the conviction does not

17

determine which specific act or acts form the basis for the conviction.  Id. (citing People v. McIntyre, 115 Cal. App. 3d 899, 910-11 (1981)).  In other words, each member of the jury merely decides whether Plaintiff resisted arrest at some point on a particular date.  McIntyre, 115 Cal. App. 3d at 910.  It follows that "a jury's verdict necessarily determines the lawfulness of the officers' actions throughout the whole course of the defendant's conduct, and any action alleging the use of excessive force would 'necessarily imply the invalidity of his conviction.'"  Id. (quoting Susag v. City of Lake Forest, 94 Cal. App. 4th 1401, 1409, 1410 (2002)).

In Susag, the plaintiff in a Section 1983 action alleging excessive force had been convicted by a jury for a violation of Section 148 for conduct contemporaneous with the alleged excessive force.  94 Cal. App. 4th at 1406.  Because the record in the criminal case did not reflect what acts formed the basis for the conviction, the court concluded that "any claim of excessive force based on discrete acts that occurred immediately preceding [plaintiff]'s arrest is barred by the Supreme Court's holding in [Heck] since a finding in his favor would necessarily imply the invalidity of his conviction under Penal Code section 148, subdivision (a)."  Id. at 1410.  The court held that the only claims that would not be barred by Heck would be "claims of excessive force that took place after he was finally subdued and placed in the patrol car."  Id.

Here, the jury did not specify which of Plaintiff's acts on

1  July 8 and July 9 supported conviction under Section 148.  This

2  means that a finding that an officer used excessive force at any

3  time before Plaintiff was "subdued and placed in the patrol car"

4  would invalidate the convictions.  See id.

5              **b.   Officer Martin**

6       Plaintiff does not allege that Officer Martin behaved

7  culpably in connection with the July 9 incident.  Therefore the

8  only actions of Officer Martin at issue are those on July 8.

9       The jury that convicted Plaintiff under Section 148 for his

10  actions on July 8 could have based its verdict on any of the

11  several actions that allegedly violated that statute.  See

12  McIntyre, 115 Cal. App. 3d at 910.  The state introduced evidence

13  that Plaintiff disobeyed Officer Martin by backing away from the

14  officer, turning his back to him, and running into the den.  Any

15  finding that an action by Officer Martin used excessive force on

16  July 8 would imply that a conviction based on any of those

17  actions was invalid.  See Susag, 94 Cal. App. 4th at 1410.  For

18  instance, a finding that discharging the taser amounted to

19  excessive force would imply the invalidity of a conviction based

20  on Plaintiff's subsequent act of running into the den area.  This

21  is because the jury may have based its conviction under Section

22  148 on the act of running into the den area.  Consequently,

23  claims based on any allegedly excessive force inflicted prior to

24  Plaintiff's flight into the den area are barred by Heck.

25  Plaintiff does not allege that Officer Martin inflicted excessive

26  force on him after he fled into the den area.  Accordingly,

19

1 summary judgment is GRANTED in favor of Officer Martin on the
2 excessive force claim.

### c.   Officers Dupras and Galindo

4      Plaintiff does not allege that Officer Dupras or Officer
5 Galindo had any role in the events of July 8.

6      Plaintiff contends that, on July 9, Officers Dupras and
7 Galindo applied excessive force while effectuating their arrest
8 of Plaintiff.  He contends that they twisted his arm, kicked his
9 leg from under him to knock him to the floor, and placed a knee
10 into his back and his neck while he was on the ground.

11     When the jury convicted Plaintiff under Section 148, it did
12 not specify what action by Plaintiff supported the conviction or
13 when such an action occurred.  The jury found that at some point,
14 Plaintiff "resist[ed], delay[ed], or obstruct[ed]" the officers
15 in the course of their lawful duties.  Cal. Penal Code
16 § 148(a)(1).  The "jury's verdict necessarily determine[d] the
17 lawfulness of the officers' actions throughout the whole course
18 of the [Plaintiff]'s conduct."  McIntyre, 115 Cal. App. 3d at
19 910.  This means that a finding that Officer Dupras or Officer
20 Galindo inflicted excessive force upon Plaintiff at any time
21 prior to his being subdued and placed in the patrol car would
22 necessarily imply the invalidity of Plaintiff's conviction.  See
23 Susag, 94 Cal. App. 4th at 1410.  Plaintiff does not allege that
24 Officers Dupras or Galindo engaged in conduct that would give
25 rise to a claim for excessive force after he was placed in the
26 patrol car.  Accordingly, summary judgment in favor of Officer

1    Dupras and Officer Galindo on the excessive force claim is

2    GRANTED.

3                 **5.   Warrantless Entry and Seizure of Plaintiff**

4         Section 1983 provides a cause of action against police

5    officers who violate the Fourth Amendment by making a warrantless

6    entry into or arrest within a person's home without probable

7    cause and in the absence of exigent circumstances.  LaLonde v.

8    County of Riverside, 204 F.3d 947, 954 (9th Cir. 2000) (citing

9    Payton v. New York, 445 U.S. 573, 590, 100 S. Ct. 1371, 63 L. Ed.

10   2d 639 (1980)).

11        Heck will bar Plaintiff's claims of illegal entry and

12   seizure under the Fourth Amendment if his success would

13   necessarily imply an invalidity of his Section 148 conviction.

14   The Supreme Court in Heck gave the following example of a Section

15   1983 action that is barred by a prior conviction:

16             A state defendant is convicted of and
               sentenced for the crime of resisting arrest,
17             defined as intentionally preventing a peace
               officer from effecting a lawful arrest. . . .
18             He then brings a § 1983 action against the
               arresting officer, seeking damages for
19             violation of his Fourth Amendment right to be
               free from unreasonable seizures.  In order to
20             prevail in this § 1983 action, he would have
               to negate an element of the offense of which
21             he has been convicted. Regardless of the
               state law concerning res judicata . . . the
22             § 1983 action will not lie.

23   Heck, 512 U.S. at 487 (internal citations omitted); see Cummings

24   v. Akron, 418 F.3d 676, 684 (6th Cir. 2005) (plaintiff's Section

25   1983 excessive force claim was barred under Heck because the

26   officer's excessive force would have been a defense to the charge

                                   21

1    of assaulting a police officer of which he was convicted, but his

2    claim that his Fourth Amendment rights were violated could

3    proceed because, under Ohio law, such a claim was not a defense

4    to the criminal charge).

5        An element of Section 148 is a finding that the officer

6    against whom the conduct is directed "was acting lawfully at the

7    time." Simons, 42 Cal. App. 4th at 1109 (citing Gonzalez 51 Cal.

8    3d 1179 at 1217).  "This means, where the offense is committed

9    upon an officer effecting an arrest the arrest must have been

10   lawful." People v. Wilkins, 14 Cal. App. 4th 761, 776 (1993).

11   To enter a dwelling without consent and make a lawful warrantless

12   arrest, officers "must not only have had reasonable cause to

13   believe defendant had committed a felony but there must also have

14   been exigent circumstances justifying the officers' immediate

15   entry without obtaining a warrant." Id. at 777 (citing Welsh v.

16   Wisconsin, 466 U.S. 740, 750, 104 S. Ct. 2091, 80 L. Ed. 2d 732

17   (1984)).

18              a.   Officer Martin

19       A finding that Officer Martin violated Plaintiff's Fourth

20   Amendment rights by entering the Residence on July 8 would

21   necessarily imply that Plaintiff's Section 148 conviction was

22   invalid.  It was only after Officer Martin entered the house that

23   Plaintiff engaged in the conduct that supported the conviction.

24   Plaintiff's actions – backing away from the officer, turning away

25   from him, and running into the den – only had the potential to

26   "resis[t], dela[y], or obstruc[t]" Officer Martin after any

22

1  alleged illegal entry took place.  <u>See</u> Cal. Penal Code

2  § 148(a)(1).  A finding that Officer Martin's entry violated the

3  Fourth Amendment would mean that he was not engaged in his duties

4  under the statute.  This is because a law enforcement official

5  has no duty to take illegal action and thus "is not engaged in

6  'duties,'" if his conduct is unlawful.  <u>Simons</u>, 42 Cal. App. 4th

7  at 1109 (quoting <u>Gonzalez</u> 51 Cal. 3d at 1217).  Plaintiff could

8  not interfere with Officer Martin's duties, as defined in Section

9  148, unless the officer had acted lawfully in entering the

10 Residence.  Plaintiff may not recover under Section 1983 for

11 Officer Martin's alleged Fourth Amendment violations so long as

12 the Section 148 conviction stands.  Therefore, summary judgment

13 is GRANTED in favor of Officer Martin on the Fourth Amendment

14 claim.

15                    **b.   Officers Dupras and Galindo**

16     Plaintiff seeks to recover on the basis that, on July 9,

17 "Officer Dupras conducted a warrantless and non-consensual entry

18 of the residence" and "did seize Plaintiff without probable

19 cause."  Pl.'s Opp'n 3, 7.  Claims that the officers violated

20 Plaintiff's Fourth Amendment rights are also barred if they

21 necessarily imply the conviction under Section 148 for the July 9

22 incident is invalid.

23     Under California law, an unlawful entry renders an otherwise

24 lawful arrest unlawful, for purposes of Section 148.  Implicit in

25 the jury's finding that Plaintiff violated Section 148 is a

26 finding that officers "had reasonable cause to believe defendant

                              23

1  had committed a felony" and that there existed "exigent
2  circumstances justifying the officers' immediate entry without
3  obtaining a warrant." <u>Wilkins</u>, 14 Cal. App. 4th at 777.
4  Otherwise, the officers' warrantless entry and arrest of
5  Plaintiff would have been unlawful.  If that were the case,
6  Plaintiff could not be guilty of resisting, delaying, or
7  obstructing the officers in the course of their lawful duties.  A
8  finding by this Court that Officer Dupras or Officer Galindo
9  illegally entered the Residence or illegally seized Plaintiff
10 would imply the invalidity of the Section 148 conviction.
11 Accordingly, summary judgement in favor of Officers Dupras and
12 Galindo on Plaintiff's Fourth Amendment claims is GRANTED.

13 **V.   Plaintiff's Motion for Summary Judgment**

14       For the reasons stated above, there is no genuine issue as
15 to a material fact and Defendants are entitled to judgment as a
16 matter of law.  Therefore, Plaintiff's Motion for Summary
17 Judgment is DENIED.

18       **ACCORDINGLY:**

19 1.   Plaintiff's Motion for Summary Judgment is DENIED.

20 2.   Summary judgment for Defendants is GRANTED.

21 3.   The Clerk of this Court shall enter judgment for Defendants.

22

23 IT IS SO ORDERED.

24 **Dated:  April 25, 2006**                **/s/ Robert E. Coyle**
25 810ha4                           UNITED STATES DISTRICT JUDGE

26

24